UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
  JULIANA GYORI,

                      Plaintiff,

    -against-

  AWISCO NEW YORK CORP.; ADP
  TOTALSOURCE CO XXII, INC.; LLOYD
  ROBINSON, individually; IBRAHIM
  ABDELSAYED, individually,

                    Defendants.
------------------------------------------------------------------X

No. 21 Civ. 3850

**COMPLAINT**

**Plaintiff Demands Trial By Jury**

Plaintiff JULIANA GYORI, by and through her attorneys, the DEREK SMITH LAW GROUP, PLLC, as and for her Complaint in this action, alleges as follows upon information and belief:

## NATURE OF THE CLAIMS

1. This action is brought to remedy, *inter alia*, Defendants' unlawful age-based employment discrimination against Plaintiff, along with retaliation for Plaintiff's opposition to their unlawful age discrimination.

2. Through their unlawful and discriminatory conduct, Defendants violated, *inter alia*, the New York State Human Rights Law, New York Executive Law § 290, *et seq*. (NYSHRL); and the New York City Human Rights Law, Administrative Code of the City of New § 8-107 *et seq*. ("NYCHRL"); the California Fair Employment and Housing Act, Cal. Govt. Code § 12940 (FEHA); as well as New York and California common law.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen, resident, and/or domiciliary of California, whereas no Defendant is. This Court also has supplemental jurisdiction pursuant to New York and California law.

4. Plaintiff exhausted her administrative remedies with the California Department of Fair Employment and Housing (DFEH) prior to bringing her present California law claims, by filing an administrative complaint and receiving a "right to sue letter" on about November 23, 2020. Plaintiff then satisfied all administrative prerequisites by timely filing a lawsuit within one year of receiving her right to sue letter from the DFEH.

5. Venue is properly laid in this District, as a substantial part of the events giving rise to this action arose in Queens County, within the Eastern District of New York, where one or more Defendants reside, are domiciled, work in, or are located.

6. Venue is also properly laid in this District pursuant to 42 U.S.C. § 2000e-5(f)(3), which states in pertinent part that venue may be properly laid in a district "where the unlawful employment practice is alleged to have been committed" or "where the employment records relevant to such practice are maintained and administered."

## PARTIES

7. Plaintiff is an individual residing in the County of San Bernardino, State of California.

8. At all relevant times Defendant AWISCO NEW YORK CORP. ("AWISCO") is and was a corporation organized under the laws of the State of New York authorized to do and doing business in the State of California.

9. At all relevant times Defendant, ADP TOTALSOURCE CO XXII, INC. ("ADP") is and was a corporation organized under the laws of the State of Delaware authorized to do and doing business in the State of California.

10. Defendant LLOYD ROBINSON is an individual who, upon information and belief, resides in Larchmont, New York. At all times relevant, he was AWISCO's President and Owner.

11. Defendant IBRAHIM ABDELSAYED is an individual who, upon information and belief, resides in Princeton, New Jersey. At all times relevant, he was AWISCO's CFO.

12. Robinson and Abdelsayed had the authority to recommend, determine, implement, ratify, and/or enforce major policies of AWISCO and/or ADP, including but not limited to discrimination, harassment, and retaliation policies; they also had the power to manage, supervise, evaluate, discipline, hire, and fire other employees, including Plaintiff.

## FACTUAL ALLEGATIONS

13. Plaintiff was hired by AWISCO as a Controller on or about March 25, 1996.

14. Plaintiff's job duties included preparing monthly financial statements, preparing for and representing the company during tax audits, and coordinating the preparation of budget and financial forecasts with the CFO.

15. Plaintiff normally worked remotely from San Bernardino, California, and occasionally at Defendant's location at 55-15 43rd Street in Maspeth, Queens.

16. At all relevant times, Plaintiff performed her duties competently and satisfactorily.

17. At first, Plaintiff primarily worked under Robinson. But in about September 2018, Ibrahim Abdelsayed was hired as CFO. Shortly thereafter, Abdelsayed told Plaintiff that he "was in full control of Finance," "nothing can be processed without my approval" and that "I will make many changes within the company."

18. Plaintiff told Robinson about her conversation with Abdelsayed, and mentioned that Abdelsayed seemed inexperienced in accounting. Plaintiff also requested that Robinson change Plaintiff's position so that she would no longer need to work under Abdelsayed. Robinson stated that Plaintiff would need to continue working in her position and comply with Abdelsayed.

19. In or about October 2018, Plaintiff travelled to New York, where she met with Robinson. During that meeting, he told Plaintiff that she would need to go off of Defendants' medical insurance and go on Medicare, in order for the company to save money.

20. Plaintiff expressed that she was uncomfortable with going off of Defendants' medical insurance, and that it was not fair as she had been working for them since 1996. On information and belief, Abdelsayed (who is about 45 years old) was never asked to go off Defendants' health insurance. On information and belief, Abdelsayed is around 45 years old. Robinson ultimately did not remove Plaintiff's health insurance – but the episode suggests that Defendants were quite conscious of Plaintiff's age.

21. On about October 4, 2018, Plaintiff e-mailed Abdelsayed after he changed the process that Defendants used to process cash sales, without informing Plaintiff about the change. Plaintiff's procedure was created to prevent fraud, and Abdelsayed's change prevented Plaintiff from reconciling Defendants' nine branches with cash sales. Abdelsayed also changed AWISCO's general ledgers to disguise the amount of cash income the company earned.

22. Abdelsayed created General Ledger accounts, like Inventory Variance and Accounts Payable Variance, with income statements that did not comply with Generally Accepted Accounting Principles ("GAAP"), which is the accounting standard adopted by various federal government entities and rules. In particular, Abdelsayed also did not check or confirm the accuracy of AWISCO's reported inventory. Additionally, he recorded Robinson's personal expenses as inventory purchases, recorded expenses as asset purchases on the balance sheet, and retrieved cash from the "petty cash" account without proper supporting documentation.

23. When Plaintiff asked Abdelsayed why he made these changes without discussing them with her, he did not respond.

24. In October 2018, while Plaintiff was on her New York trip, Defendants received a New York State International Fuel Tax Agreement ("NYSIFTA") audit notice. Abdelsayed stated that he would handle the audit.

25. On about December 7, 2018, Plaintiff emailed Abdelsayed, reminding him that she needed to complete a New York State tax filing. Abdelsayed asked Plaintiff to "hold off on filing until I get back to you." Plaintiff replied, reminding Abdelsayed that the taxes needed to be paid by the due date, lest AWISCO get audited or penalized with late-filing fees.

26. On or around March 7, 2019, NYSIFTA imposed a $68,000 penalty as a result of a missed deadline on the audit. When Plaintiff asked to take over handling the audit, so there would be no further mistakes, she was ignored.

27. During an April 2019 telephone conversation, Abdelsayed asked Plaintiff when she planned to retire. Plaintiff replied that she would retire when she was ready. During a conference call later that month, when Plaintiff and Abdelsayed were discussing an audit by New York State tax authorities for compliance with "IFTA" (a fuel tax). Abdelsayed yelled at her: "I'm tired of your crap!"

28. On about October 28, 2019, Plaintiff took another work trip to New York. During this trip, Abdelsayed asked her to train a new Office Assistant, Annie Varma, to learn the duties of a Controller. Upon information and belief, Ms. Varma was is in her mid-thirties. Around the same time, Ms. Varma's job title was changed to "Office Team Leader." Varma had no apparent accounting experience.

29. Shortly after that, Plaintiff approached Robinson, and complained that she was being asked to train a replacement because she was regarded as too old, and that Defendants no longer wanted her working for them because of her age. Robinson denied the allegations.

5

30. In about June 2020, during a Finance Meeting, Robinson stated, in reference to an employee close to Plaintiff's age named Tom Allan, "he better retire sooner than later."

31. Upon information and belief, another employee, Vic Furman, left Defendants' employ in 2018 due to disparate treatment based on his age.

32. On about July 23, 2020, Plaintiff had a conference call with Robinson and Abdelsayed. Robinson stated that since Plaintiff was not able to travel to New York due to COVID-19, and that COVID-19 was not ending anytime soon, Plaintiff would no longer be able to perform the duties of a controller. He suggested that Plaintiff change her position to "Consultant."

33. On about July 25, 2020, Plaintiff emailed Robinson in response to his comments during the July 23, 2020 call. Plaintiff reminded him that she had worked remotely since 2004, without any issues or problems, and that all of her audit work had been completed remotely since February 25, 2020 without any issues – and that her remote work had in fact saved Defendants money, since they no longer had to pay Plaintiff's travel expenses. Plaintiff also noted that her current salary was already almost $20,000 below what she understood was the average controller salary in the Los Angeles area, and that she had not received a salary increase since 2005, unlike other employees of Defendants.

34. On about July 27, 2020, Robinson emailed Plaintiff a new employment contract for a "consultant" position, stating that "I believe that now is the right time to make a change," and asked her to review it.

35. On about July 29, 2020, Plaintiff responded to Robinson's suggested employment contract, pointed out that her assigned duties would require about 40 hours per week to complete, and explained that at Defendants' proposed $20,000 annual payments to her, she would effectively

be making only $8.33 an hour, below the minimum wage in both California and New York. Plaintiff also pointed out that Abdelsayed's yearly compensation was $215,000, even though his audit 'errors' resulted in a $68,000 penalty for the company. Plaintiff also suggested that restyling Plaintiff as an independent contractor when she was clearly an employee was illegal in California, and again expressed her concern that this action was motivated by her age.

36. On about July 31, 2020, Robinson emailed Plaintiff: "Let me be perfectly clear that your position is being eliminated and your day to day responsibilities will be eliminated.  Your threats are not appropriate. If you would like to stay on as a consultant, please let me know."

37. That same day, Plaintiff asked Robinson to provide her with a termination letter, so she could collect unemployment, if her position was eliminated.

38. On about August 13, 2020, Plaintiff received a termination letter from ADP TotalSource, stating that ADP TotalSource is Plaintiff's co-employer with AWISCO.

39. Upon information and belief, Plaintiff was the oldest female employee at AWISCO, and nearly all of the other women employed there are in their twenties or thirties.

40. Defendants discriminated and retaliated against Plaintiff based on her age, and in retaliation for her complaints about their discrimination, retaliation.

41. Defendants' adverse employment actions against Plaintiff include, but are not limited to, excessive and unfair scrutiny and criticism, removal of responsibilities, failure and refusal to stop harassment and discrimination, reduction in pay and benefits, and constructive discharge.

42. As the proximate result of Defendants' wrongful conduct, Plaintiff has and will suffer past and future lost wages in an amount to be determined at trial, but estimated to be no less than $500,000.  In particular, at Plaintiff's age, she will have trouble finding a new job.

43. As the proximate result of Defendants' wrongful conduct, particularly their humiliation of Plaintiff, she has also suffered, and will suffer, emotional distress and other non-monetary damages in an amount to be determined in the discretion of the trier of fact, but estimated to be no less than $500,000

44. Plaintiff also claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

45. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

## FIRST CAUSE OF ACTION
## NYSHRL – AGE DISCRIMINATION

46. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

47. The NYSHRL provides: "1. It shall be an unlawful discriminatory practice: (a) For an employer . . . , because of an individual's age . . . , . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296.

48. NYSHRL Section 298-a provides that the law may be applied to acts committed outside New York State against a New York resident by a New York resident or a corporation whose primary place of business is in New York. *See Guzman v. Macy's Retail Holdings, Inc*., No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at *10 (S.D.N.Y. Mar. 29, 2010) (collecting citations).

49. Defendants engaged in an unlawful discriminatory practice in violation of this provision by discriminating against Plaintiff because of her age.

50. As a result of Defendants' discrimination, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial

compensation and benefits, in amounts to be determined at trial.

51. Plaintiff has further suffered embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

52. Plaintiff demands reinstatement to her position.

## SECOND CAUSE OF ACTION
## NYSHRL – RETALIATION

53. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

54. The NYSHRL provides in pertinent part that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article." N.Y. Exec. Law §296(7).

55. Defendants engaged in an unlawful discriminatory practice in violation of this provision by wrongfully retaliating against the Plaintiff because she complained of their age-based hostile work environment and discrimination.

56. As a result of Defendants' retaliation, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial compensation and benefits, in amounts to be determined at trial.

57. Plaintiff has further suffered embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

58. Plaintiff demands reinstatement to her position.

## THIRD CAUSE OF ACTION
## NYSHRL – AIDING/ABETING/INCITING/COMPELLING/COERCING

59. Plaintiff repeats and re-alleges each and every allegation contained in the above

paragraphs of this Complaint as if fully set forth herein.

60. The NYSHRL provides in pertinent part: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6).

61. Each Defendant engaged in an unlawful discriminatory practice in violation of this provision by aiding, abetting, compelling, and/or coercing the other Defendants' discriminatory behavior as stated herein.

62. As a result of each Defendant's aiding and abetting of the other Defendants' discrimination and retaliation, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial compensation and benefits, in amounts to be determined at trial.

63. Plaintiff has further suffered embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

64. Plaintiff demands reinstatement to her position.

## FOURTH CAUSE OF ACTION
## NYCHRL – DISCRIMINATION

65. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

66. The NYCHRL provides: "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment. New York City Administrative Code § 8-107(1)(a).

67. Defendants engaged in an unlawful discriminatory practice in violation of this

provision by discriminating against Plaintiff because of her age.

68. As a result of Defendants' discrimination, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial compensation and benefits, in amounts to be determined at trial.

69. Plaintiff has further suffered embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

70. Plaintiff demands reinstatement to her position.

## FIFTH CAUSE OF ACTION
## NYCHRL – RETALIATION

71. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

72. The NYCHRL makes it an unlawful discriminatory practice for an employer "to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter . . . ." N.Y.C. Admin. Code § 8-107(1)(e).

73. Each Defendant violated this provision by discriminating against Plaintiff because she opposed Defendants' unlawful employment practices.

74. As a result of Defendants' retaliation, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial compensation and benefits, in amounts to be determined at trial.

75. Plaintiff has further suffered embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

76. Plaintiff demands reinstatement to her position.

## SIXTH CAUSE OF ACTION
## NYCHRL – AIDING AND ABETTING

77. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

78. The NYCHRL makes it an unlawful discriminatory practice for any person "to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." N.Y.C. Admin. Code § 8-107(6).

79. Each Defendant engaged in an unlawful discriminatory practice in violation of this provision by aiding, abetting, compelling, and/or coercing the other Defendants' discriminatory behavior as stated herein.

80. As a result of each Defendant's aiding and abetting of the other Defendants' discrimination and retaliation, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial compensation and benefits, in amounts to be determined at trial.

81. Plaintiff has further suffered embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

82. Plaintiff demands reinstatement to her position.

## SEVENTH CAUSE OF ACTION
## NYCHRL – SUPERVISOR LIABILITY
## (Against the Individual Defendants)

83. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

84. The NYCHRL provision titled "Employer Liability for Discriminatory Conduct by Employee, Agent or Independent Contractor," N.Y.C. Admin. Code § 8-107(13), states in relevant part: (a) "An Employer shall be liable for an unlawful discriminatory practice based upon the

12

conduct of an employee or agent which is in violation of any provision of this section," where (b) the employee or agent "exercised managerial or supervisory responsibility" or the Employer "knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action."

85. Each Individual Defendant exercised managerial or supervisory authority over one or more other employees or agents of Defendants who discriminated against or retaliated against Plaintiff.

86. Each Individual Defendant acquiesced in such conduct, or failed to take immediate corrective action to stop it, and may thus be held liable for such conduct.

87. As a result of each Individual Defendant's acquiescence in the other Defendants' discrimination and retaliation, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial compensation and benefits, in amounts to be determined at trial.

88. Plaintiff has further suffered embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

89. Plaintiff demands reinstatement to her position.

### EIGHTH CAUSE OF ACTION
### FEHA – AGE DISCRIMINATION/DISPARATE TREATMENT

90. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

91. FEHA makes it an unlawful employment practice for an employer, because of a person's age, to refuse to hire or employ her, to discharge her from employment, or to otherwise discriminate against her in compensation or in terms, conditions, or privileges of employment. Cal. Govt. Code § 12940(a).

92. Defendants took adverse employment actions against Plaintiff substantially motivated by her age, 71; their discrimination and disparate treatment included reducing her

compensation and responsibilities, and constructively discharging her.

93. Defendants' discriminatory conduct proximately caused Plaintiff to suffer general and special damages in amounts to be proven at trial.

## NINTH CAUSE OF ACTION
## FEHA – RETALIATION

94. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

95. FEHA makes it unlawful for any employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part." Cal. Gov't Code § 12940(h).

96. Plaintiff engaged in protected activity when she complained to Defendants that they were attempting to force her out of work or take away her job duties because of her age.

97. Defendants then subjected her to an adverse employment action, particularly by demoting her and constructively discharging her.

98. Defendants' discriminatory conduct proximately caused Plaintiff to suffer general and special damages in amounts to be proven at trial.

## TENTH CAUSE OF ACTION
## TERMINATION IN VIOLATION OF CALIFORNIA PUBLIC POLICY

99. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

100. Defendants and Plaintiff had an employer-employee relationship.

101. Defendants terminated Plaintiff or constructively discharged her.

102. Defendants' termination or constructive discharge of Plaintiff was substantially motivated by age discrimination or retaliatory animus based on Plaintiff's complaints of age discrimination – both of which violate California (and New York, and federal) public policy.

103. As a result of Defendants' public policy violations, Plaintiff has been harmed by

losing the enjoyment of all benefits, privileges, terms, and conditions of her employment, which provided substantial compensation and benefits, in amounts to be determined at trial.

104. Plaintiff has been further harmed through embarrassment, humiliation, and emotional distress, which are compensable in amounts to be determined at trial.

105. Plaintiff demands reinstatement to her position.

**ENTH CAUSE OF ACTION
PRIMA FACIE TORT
(Against All Defendants)**

106. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

107. By the acts and omissions described herein, Defendants intentionally inflicted harm upon Plaintiff.

108. Given Plaintiff's longstanding devotion to, and highly successful work for, Defendants, they had no legitimate justification for downgrading and terminating or constructively terminating Plaintiff.

109. Even if Defendants' motives are ultimately deemed to be non-discriminatory and non-retaliatory, then Defendants could only have been motivated by "disinterested malevolence," or the intent to simply harm Plaintiff.

110. But for Defendants' downgrading of Plaintiff and reduction of her salary, she would still be earning $87,800 per year – instead of the $20,000 in "consultant" or "contractor" fees that Defendants offered Plaintiff when they constructively discharged her. Thus, Plaintiff has suffered or will suffer $67,800 in annual special damages as a direct result of Defendants' tortious acts and omissions.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursements; and for permanent equitable and injunctive relief that includes reinstatement to her prior position; and for such other relief as the Court deems just and proper.

**JURY DEMAND:**  Plaintiff demands a trial by jury as to all issues so triable.

Date:   July 8, 2021
          New York, New York

                                        Respectfully submitted,

                                        **DEREK SMITH LAW GROUP, PLLC**

                              BY:  */s/ Daniel S. Kirschbaum*
                                        Daniel Kirschbaum, Esq.
                                        One Pennsylvania Plaza, 49th Floor
                                        New York, New York 10119
                                        (212) 587-0760

                                        *Attorneys for Plaintiff*